**FILED**

MAR 1 5 2006

U.S. BANKRUPTCY COURT
FOR THE DISTRICT OF ARIZONA

# IN THE UNITED STATES BANKRUPTCY COURT

## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| In re: | ) Chapter 7 |
| SHIRLEY YARBROUGH and THOMAS YARBROUGH, | ) No. 4-05-bk-00816-JMM |
| | ) Adversary No. 4-05-ap-00158-JMM |
| Debtors. | ) |
| PATRICIA NELSON and JOHNNIE NELSON, | ) **MEMORANDUM DECISION RE:** |
| | ) **MOTIONS FOR PARTIAL SUMMARY** |
| Plaintiffs, | ) **JUDGMENT** |
| vs. | ) (Opinion to Post) |
| SHIRLEY YARBROUGH and THOMAS YARBROUGH, | ) |
| Defendants. | ) |

On March 8, 2006, cross-motions for partial summary judgment were filed by both Plaintiffs and Defendants. After considering the facts, law, and arguments of the parties, the court now rules.

h:\wp\orders\

# FACTS

## The State Court Lawsuit

### A. The Complaint

On January 9, 2003, the Nelsons filed a civil complaint against the Yarbroughs, Case No. C20030164. (Ex. A.) The lawsuit primarily concerned the Defendants' alleged trespass upon and interference with the Nelsons' real property, and a related easement. (Ex. A.) The Complaint contained three counts:

| | |
|---|---|
| Count I | Breach of contract (the warranty deed authorizing use of an easement); |
| Count II | Intentional Interference with Property Right; |
| Count III | Injunctive Relief. |

The damages sought included compensatory and punitive damages, together with attorneys' fees. The theory for attorneys' fees was expressly provided for in the complaint as ARIZ. REV. STAT. § 12-341.01 (Ex. A), and were sought only in relation to Count I of the Complaint.

A jury trial on all issues was held over a four-day period, from September 21 to 24, 2004. (Ex. 6 and E.)

### B. The Jury Instructions and Interrogatories

#### 1. Instructions

The court's instructions to the jury, on the items relevant here, included:

- Several of the instructions related to whether there had been a contract between the parties. (Ex. B.)

- Two instructions related to the claim of interference with property rights. The first read:

> "Each party claims that the other is liable for intentional interference with their property rights. Intentional interference with property rights requires proof that:
>
> 1. The interference was substantial;
>
> 2. The interference was intentional; and
>
> 3. The interference was unreasonable under the circumstances."

The second instruction read:

> 'Intentionally' or 'with the intent to' means that a person's objective is to cause that result or to engage in that conduct.

## 2. Interrogatories and Jurors' Answers

In addition, the jury responded to relevant factual interrogatories which were posed to them, as follows:

> 3. Defendants YARBROUGH have obstructed the plaintiffs NELSONS' 30-foot wide easement.
>
> Answer: Yes.
>
> 4. Defendants YARBROUGH have placed the bottom portion of the driveway in the easement.
>
> Answer: Yes.

(Ex. F and 4.)

### 3. Verdicts and Judgment

On September 24, 2004, the jury returned a verdict for $3,900 in actual damages in favor of the Nelsons on the intentional interference claims,

> . . . and against defendants YARBROUGH on plaintiffs' claim for Intentional Interference with Property Right based on defendants' removal of safety berms, removal of the Nelsons' survey stakes and pins and/or placing the bottom portion of the driveway in the easement and finding the full amount of damages to be $3,900.00.

(Ex. B, F, 4, 7, and 8.) The jury awarded no punitive or other damages beyond the $3,900 noted above. (Ex. F and 4.) As for the contract count that went to the jury, it returned the following verdict:

> We, the Jury, duly impaneled and sworn in the above-entitled action, upon our oaths, do find in favor of plaintiffs NELSON and against defendants YARBROUGH on plaintiffs' claim for Breach of Contract and find the full amount of damages to be $0.00.

(Ex. B.) (Emphasis supplied.)

The court then instructed Nelsons' counsel to prepare a form of judgment, including a "provision for jury fees" of $860.20. (Ex. F and 4.) On November 19, 2004, judgment was signed by the court for the $3,900 damages amount. The court also, without explanation as to the legal theory utilized, awarded attorneys' fees to Plaintiffs in the sum of $26,765. (Ex. 6 and E.)

### LAW

### A. General Principles of Collateral Estoppel

If a state court would give preclusive effect to a judgment rendered by another court of that state, then the Full Faith and Credit Act, 28 U.S.C. § 1738, imposes the same obligation upon a federal court. *McDonald v. City of W. Branch*, 466 U.S. 284, 287 (1984). Thus, federal courts must

afford a state court's judgment the same preclusive effect as would occur in that state's courts. *Caldeira v. County of Kauai*, 866 F.2d 1175, 1178 (9th Cir. 1989), *cert. denied*, 493 U.S. 817 (1989).

The bankruptcy court's decision to look to the entire record of the prior proceedings rather than just the judgment is consistent with case law in this circuit. For example, in *In re Houtman*, the Ninth Circuit noted:

> This does not mean that the documents which officially enshrine the state court proceedings may not be considered by the bankruptcy court as establishing the dischargeability of a debt. What is required is that the bankruptcy court consider all relevant evidence, including the state court proceedings, that is offered by the parties, or requested by the court, and on the basis of that evidence determine the nondischargeability of judgment debts.

568 F.2d 651 (9th Cir. 1978); *see also, In re Daley*, 776 F.2d 834, 836-37 (9th Cir. 1985), *cert. denied*, 476 U.S. 1159 (1986).

Following *Houtman*, the courts of this and other circuits have insisted that bankruptcy courts review "the entire record, not just the judgment" in determining the issue preclusive effect of prior state court judgments on nondischargeability in bankruptcy. *In re Silva*,190 B.R. 889, 889 (9th Cir. BAP 1995) ("In order to properly apply the doctrine of collateral estoppel, a bankruptcy court must look at the entire record of the prior proceeding, not just the judgment."); *Spillman v. Harley*, 656 F.2d 224, 228 (6th Cir. 1981) ("entire record. . . not just the judgment"); *In re Shuler,* 722 F.2d 1253, 1257 (5th Cir. 1984), *cert. denied*, 469 U.S. 817 (1984) (same); *In re Latch*, 820 F.2d 1163, 1167 (11th Cir. 1987) (same). *See also*, 4 Collier on Bankruptcy ¶ 523.12[5] (2005) ("The court called upon to determine whether the judgment is dischargeable should look to the entire record to determine the wrongful character of the act, for even the pleadings are not necessarily conclusive.").

As the Ninth Circuit has noted: "It is not enough that the party introduce the decision of the prior court; rather, the party must introduce a sufficient record of the prior proceeding to enable the trial court to pinpoint the exact issues previously litigated." *United States v. Lasky*, 600 F.2d 765, 769 (9th Cir. 1978), *cert. denied*, 444 U.S. 979 (1979).

Case 4:05-ap-00158-JMM    Doc 35    Filed 03/15/06    Entered 03/15/06 13:44:10    Desc
Main Document      Page 5 of 22

1    In this case, the parties have each moved for partial summary judgment on the § 523(a)(6)

2    issues, and together have provided what they agree is the necessary underlying record. Thus, according

3    to both parties, the matter may be decided on summary judgment as a matter of law. Neither side

4    maintains that issues of fact exist which require a re-trial of the issues.

5

6    **B.**    **Are Attorneys' Fees of $26,765 Non-Dischargeable?**

7

8        The largest component of the claim for non-dischargeability is the $26,765 which was

9    awarded for the Nelsons' attorneys' fees.

10        The Nelsons' complaint (Ex. A) contained a breach of contract count (Count I) for which

11   attorneys' fees may be awarded to the prevailing party if a contested action arises out of an express or

12   implied contract. ARIZ. REV. STAT. § 12-341.01(A). The Nelsons sought fees only under this statute.

13   (Ex. A.) The only other distinct basis, under that statute, by which fees may be awarded is upon a clear

14   and convincing showing "that the claim or defense constitutes harassment, is groundless and is not made

15   in good faith." ARIZ. REV. STAT. § 12-341.01(C). This second ground, however, was neither alleged nor

16   proven by the Nelsons. Thus, it appears that fees were sought only under the contract provision of the

17   statute.

18        The jury found in favor of the Nelsons on the breach of contract count, although it

19   awarded them no damages. Thus, because the Nelsons prevailed, it was not improper for the court to

20   award attorneys' fees "to the successful party" on that count, even though no damages flowed therefrom.

21   ARIZ. REV. STAT. § 12-341.01 (D) specifically leaves the discretion, to award fees under the statute, to

22   "the Court and not a jury . . . ."

23        However, from a bankruptcy standpoint, a mere breach of contract claim does not give

24   rise to a non-dischargeable debt under 11 U.S.C. § 523(a)(6). *Snoke v. Riso (In re Riso)*, 978 F.2d 1151,

25   1154 (9th Cir. 1992). A statutory right to an award of attorneys' fees for a breach of contract does not

26   fit the test for a "wilful and malicious injury." It merely presents a possible monetary consequence for

h:\wp\orders\                                        6

breaching a contract. *See, e.g., Kawaauhau v. Geiger,* 523 U.S. 57, 118 S.Ct. 974 (1998); *In re Thiara,* 285 B.R. 420 (9th Cir. BAP 2002) (11 U.S.C. § 523(a)(6) cases).

The Nelsons also appear to argue that the attorneys' fee award arises out of the intentional tort of interference with a property right, for which they also obtained judgment. However, in Arizona, attorneys' fees for tort actions are not generally allowed.

There is one exception to this general rule. In certain types of contract cases, a successful party on <u>insurance contract</u> "bad faith" claims may recover not only attorneys' fees expended for litigation on the contract claim, but also fees expended in litigating an "interwoven" tort claim. *See Pettay v. Insurance Mktg. Servs., Inc. (West),* 156 Ariz. 365, 368, 752 P.2d 18, 21 (1987); *Campbell v. Westdahl,* 148 Ariz. 432, 440-41, 715 P.2d 288, 296-97 (1985). This exception is narrow, allowing attorneys' fees for "bad faith" denial of contractual insurance claims to be awarded. But these claims are a direct result of a breach of an insurance contract.

In such cases, the injured party usually alleges a combination of tort and contract claims, or merely a tort claim which has as its basis the breach of an insurance contract. Regardless of the form of the pleadings, a court considering that type of a "bad faith" claim will look to the nature of the action and the surrounding circumstances to determine whether the claim is one "arising out of a contract." *Wenk v. Horizon Moving & Storage Co.,* 131 Ariz. 131, 132, 639 P.2d 321, 322 (1982). The leading Arizona case in this area is *Sparks v. Republic National Life Insurance Co.,* 132 Ariz. 529, 647 P.2d 1127 (1982), an insurance bad faith case.

In *Sparks,* the plaintiffs successfully brought an action against their insurer claiming, in part, breach of contract and bad faith (tort). In determining whether the action was one "arising out of a contract" pursuant to § 12-341.01, the Arizona Supreme Court stated that attorneys' fees may be awarded "upon facts which show a breach of contract, the breach of which may also constitute a tort." *Id.* at 543, 647 P.2d at 1141. The fact that the two legal theories are intertwined, it explained, does not preclude recovery of attorneys' fees under § 12-341.01(A) "as long as the cause of action in tort could not exist *but for* the breach of the contract." *Id.*

h:\wp\orders\                                   7

1    The basis for this finding is the legal duty, implicit in an insurance contract, that the

2    insurer must deal in good faith with its insured. *Id.* at 543-44, 647 P.2d at 1141-42, quoting *Noble v.*

3    *National American Life Ins. Co.,* 128 Ariz. 188, 190, 624 P.2d 866, 868 (1981). Because the tort of bad

4    faith was "so intrinsically related to the contract," the Supreme Court held that the insured's action was

5    one "arising out of a contract" within § 12-341. *Sparks v. Republic National Life Insurance Co.,* 132

6    Ariz. at 544, 647 P.2d at 1142.

7            The instant case is altogether different from the *Sparks* and *Noble* line of cases. Here, the

8    breach of contract theory was based upon language in a warranty deed, which their predecessor had been

9    a party to, while the tort "interference" theory arose out of a common law set of facts which the Nelsons

10   equate to intentional and tortious acts. The two causes of action were not "interwoven" as are the

11   insurance bad faith cases.[1]

12           Thus, the only basis for the $26,765 fee award would have been solely for the Nelsons'

13   breach of contract count, which arose out of the warranty deed which granted them an easement.

14           Since a mere breach of contract claim is dischargeable, and the instant breach of contract

15   was not "interwoven" with a "bad faith" insurance-related tort as Arizona law requires, summary

16   judgment will be granted to Defendants Yarbrough on this aspect of the state court's judgment. The

17   $26,763 of attorneys' fees is thus dischargeable.

18

19

20

21

22

23

---

[1]       Moreover, it does not appear that Arizona even recognizes a tort of "intentional
24   interference with property rights," and appellate courts have refused to extend the law that far. *See*
      *Tobias v. Dailey,* 196 Ariz. 418, 998 P.2d 1091 (Div. 1, Ariz. Ct. App. 1000). Nevertheless, here, the
25   Superior Court allowed the issue to go to the jury, and a judgment was rendered on the claim, which was
26   not appealed. Thus, the parties are bound by the state court decision, and the judgment's preclusive effect
      may now be determined by the bankruptcy court.

**C.      Is the Judgment for Intentional Interference With a Property Right Dischargeable?**

To determine if a state court judgment is non-dischargeable in a bankruptcy case, the bankruptcy court must apply the doctrine of collateral estoppel.  Here, the jury awarded damages of $3,900 for the Defendants' intentional interference with the Nelsons' property right.

Although principles of *res judicata* do not apply to dischargeability issues, *Brown v. Felsen,* 442 U.S. 127, 138-39, 99 S.Ct. 2205, 2212-13 (1979), principles of collateral estoppel do. *Brown, id., Grogan v. Garner,* 498 U.S. 279, 284, 111 S.Ct. 654 (1991).

Under bankruptcy law, collateral estoppel (issue preclusion) may bar re-litigation of the same cause of action if four elements exists:

>    1.      The issue sought to be precluded must be the same as that involved in the prior action;
>
>    2.      The issue must have been actually litigated;
>
>    3.      It must have been determined by a valid and final judgment; and
>
>    4.      The determination must have been essential to the final judgment.

Arizona's law of collateral estoppel has essentially the same elements. *Garcia v. Gen. Motors Corp.,* 195 Ariz. 510, 514 ¶ 9, 990 P.2d 1069, 1073 (App. 1999). *See, also, In re Berr,* 172 B.R. 209, 306 (9th Cir. BAP 1994).  To determine this question, bankruptcy courts look to state law to ascertain if the state law cause of action contains the same elements as a § 523(a)(6) "wilful and malicious" cause of action.  If they match, collateral estoppel bars re-litigation.  If they do not match, then the bankruptcy cause of action must proceed to trial.

In this case, the Superior Court trial judge instructed the jury that a state law cause of action for intentional interference with a property right existed and, paraphrasing those instructions, it set forth the following elements:

>    1.      The interference was substantial;

2.      The interference was intentional, and was intended to cause an adverse result to the Nelsons; and

3.      The interference was unreasonable under the circumstances.

In bankruptcy cases, a "wilful" injury must be "deliberate or intentional." *Geiger*, 523 U.S. at 61, FN 3. The wilful injury requirement of § 523(a)(6) "renders debt nondischargeable when there is either a subjective intent to harm, or a subjective belief that harm is substantially certain." *Carrillo v. Su (In re Su)*, 290 F.2d 1140, 1144 (9th Cir. 2002), *citing Petralia v. Jercich (In re Jercich)*, 238 F.2d 1202 (9th Cir. 2001).

The bankruptcy elements for "malicious" in a § 523(a)(6) action are:

1.      a wrongful act,

2.      done intentionally,

3.      which necessarily causes injury, and

4.      is done without just cause or excuse.

*Jercich*, 238 F.2d at 1209.

Comparing the two sets of elements leaves this court with the conclusion that collateral estoppel does not apply, and that the nondischargeability claim for this type of injury is not entitled to partial summary judgment in favor of Plaintiffs. There are other factual elements which need to be fleshed out at trial in bankruptcy court that did not exist in state court. Therefore, this issue must be tried, to ascertain whether Defendants' conduct rose to a nondischargeable debt for a "wilful and malicious injury."

## **RULING**

The Defendants' motion for partial summary judgment on the $26,765 attorneys' fees claim is GRANTED, and that portion of the Nelsons' claim may be discharged. Plaintiffs' motion for partial summary judgment on this issue is DENIED.

1    Plaintiffs' motion for partial summary judgment on the $3,900 damage claim is DENIED.

2    The Defendants' motion for summary judgment on the same issue is also DENIED. The matter must be

3    tried, in order to determine if the $3,900 judgment is nondischargeable under § 523(a)(6).

4    The court will issue a separate interlocutory order on these issues.

5    The court sets **April 3, 2006, at 9:45 a.m.** in Courtroom 446, for a status conference to

6    explore when the parties will be prepared to try the remaining § 523 (a)(6) and § 727 counts of Plaintiffs'

7    complaint.

8

9    DATED: March 15 , 2006.

10

11    _____
      JAMES M. MARLAR
12    UNITED STATES BANKRUPTCY JUDGE

13    COPIES served as indicated below this 15
      day of March, 2006, upon:

14

15    Raymond R. Hayes
      Bridegroom & Hayes
      1656 N. Columbus Blvd.
16    Tucson, AZ 85712
      Email bridegroomhayes@ultrasw.com

17

18    Scott M. Baker
      Scott Macmillan Baker, PC
      4562 N. First Ave., #100
19    Tucson, AZ 85718
      Email smbaker1@qwest.net

20

21    Office of the United States Trustee
      230 North First Avenue, Suite 204
      Phoenix, AZ 85003-1706
22    U.S. Mail

23

24    By  MB Thompson
      _____
      Judicial Assistant

25

26

⑤

**FILED**

MAR 1 5 2006

U.S. BANKRUPTCY COURT
FOR THE DISTRICT OF ARIZONA

1
2
3
4
5
6

# IN THE UNITED STATES BANKRUPTCY COURT

7

## FOR THE DISTRICT OF ARIZONA

8
9

| | |
|---|---|
| In re: | ) |
| | ) Chapter 7 |
| SHIRLEY YARBROUGH and THOMAS YARBROUGH, | ) No. 4-05-bk-00816-JMM |
| | ) Adversary No. 4-05-ap-00158-JMM |
| Debtors. | ) |
| | ) **MEMORANDUM DECISION RE:** |
| PATRICIA NELSON and JOHNNIE NELSON, | ) |
| | ) **MOTIONS FOR PARTIAL SUMMARY** |
| | ) |
| Plaintiffs, | ) **JUDGMENT** |
| vs. | ) |
| | ) (Opinion to Post) |
| SHIRLEY YARBROUGH and THOMAS YARBROUGH, | ) |
| | ) |
| Defendants. | ) |

10
11
12
13
14
15
16
17
18

On March 8, 2006, cross-motions for partial summary judgment were filed by both

19

Plaintiffs and Defendants. After considering the facts, law, and arguments of the parties, the court now

20

rules.

21
22
23
24
25
26

h:\wp\orders\

# FACTS

## The State Court Lawsuit

**A.    The Complaint**

On January 9, 2003, the Nelsons filed a civil complaint against the Yarbroughs, Case No. C20030164. (Ex. A.)  The lawsuit primarily concerned the Defendants' alleged trespass upon and interference with the Nelsons' real property, and a related easement. (Ex. A.) The Complaint contained three counts:

| | | |
|---|---|---|
| Count I | Breach of contract (the warranty deed authorizing use of an easement); | |
| Count II | Intentional Interference with Property Right; | |
| Count III | Injunctive Relief. | |

The damages sought included compensatory and punitive damages, together with attorneys' fees.  The theory for attorneys' fees was expressly provided for in the complaint as ARIZ. REV. STAT. § 12-341.01 (Ex. A), and were sought only in relation to Count I of the Complaint.

A jury trial on all issues was held over a four-day period, from September 21 to 24, 2004. (Ex. 6 and E.)

**B.    The Jury Instructions and Interrogatories**

**1.    Instructions**

The court's instructions to the jury, on the items relevant here, included:

h:\wp\orders\

2

- Several of the instructions related to whether there had been a contract between the parties. (Ex. B.)
- Two instructions related to the claim of interference with property rights. The first read:

> "Each party claims that the other is liable for intentional interference with their property rights. Intentional interference with property rights requires proof that:
>
> 1. The interference was substantial;
>
> 2. The interference was intentional; and
>
> 3. The interference was unreasonable under the circumstances."

The second instruction read:

> 'Intentionally' or 'with the intent to' means that a person's objective is to cause that result or to engage in that conduct.

## 2.    <u>Interrogatories and Jurors' Answers</u>

In addition, the jury responded to relevant factual interrogatories which were posed to them, as follows:

> 3.    Defendants YARBROUGH have obstructed the plaintiffs NELSONS' 30-foot wide easement.
>
>    Answer: Yes.
>
> 4.    Defendants YARBROUGH have placed the bottom portion of the driveway in the easement.
>
>    Answer: Yes.

(Ex. F and 4.)

3. **Verdicts and Judgment**

On September 24, 2004, the jury returned a verdict for $3,900 in actual damages in favor of the Nelsons on the intentional interference claims,

> . . . and against defendants YARBROUGH on plaintiffs' claim for Intentional Interference on Property Right based on defendants' removal of safety berms, removal of the Nelsons' survey stakes and pins and/or placing the bottom portion of the driveway in the easement and finding the full amount of damages to be $3,900.00.

(Ex. B, F, 4, 7, and 8.) The jury awarded no punitive or other damages beyond the $3,900 noted above. (Ex. F and 4.) As for the contract count that went to the jury, it returned the following verdict:

> We, the Jury, duly impaneled and sworn in the above-entitled action, upon our oaths, do find in favor of plaintiffs NELSON and against defendants YARBROUGH on plaintiffs' claim for Breach of Contract and find the full amount of damages to be $0.00.

(Ex. B.) (Emphasis supplied.)

The court then instructed Nelsons' counsel to prepare a form of judgment, including a "provision for jury fees" of $860.20. (Ex. F and 4.) On November 19, 2004, judgment was signed by the court for the $3,900 damages amount. The court also, without explanation as to the legal theory utilized, awarded attorneys' fees to Plaintiffs in the sum of $26,765. (Ex. 6 and E.)

## LAW

A. **General Principles of Collateral Estoppel**

If a state court would give preclusive effect to a judgment rendered by another court of that state, then the Full Faith and Credit Act, 28 U.S.C. § 1738, imposes the same obligation upon a federal court. *McDonald v. City of W. Branch*, 466 U.S. 284, 287 (1984). Thus, federal courts must

| | |
|---|---|
| 1 | afford a state court's judgment the same preclusive effect as would occur in that state's courts. |
| 2 | *Caldeira v. County of Kauai*, 866 F.2d 1175, 1178 (9th Cir. 1989), *cert. denied*, 493 U.S. 817 (1989). |
| 3 |        The bankruptcy court's decision to look to the entire record of the prior proceedings rather |
| 4 | than just the judgment is consistent with case law in this circuit. For example, in *In re Houtman*, the |
| 5 | Ninth Circuit noted: |
| 6 | |
| 7 |         This does not mean that the documents which officially enshrine the state court proceedings may not be considered by the bankruptcy court as establishing the |
| 8 | dischargeability of a debt. What is required is that the bankruptcy court consider all relevant evidence, including the state court proceedings, that is offered by the parties, or requested by the court, and on the basis of that evidence determine the |
| 9 | nondischargeability of judgment debts. |
| 10 | |
| 11 | 568 F.2d 651 (9th Cir. 1978); *see also, In re Daley*, 776 F.2d 834, 836-37 (9th Cir. 1985), *cert. denied*, |
| 12 | 476 U.S. 1159 (1986). |
| 13 |        Following *Houtman*, the courts of this and other circuits have insisted that bankruptcy |
| 14 | courts review "the entire record, not just the judgment" in determining the issue preclusive effect of prior |
| 15 | state court judgments on nondischargeability in bankruptcy. *In re Silva*,190 B.R. 889, 889 (9th Cir. BAP |
| 16 | 1995) ("In order to properly apply the doctrine of collateral estoppel, a bankruptcy court must look at the |
| 17 | entire record of the prior proceeding, not just the judgment."); *Spillman v. Harley*, 656 F.2d 224, 228 (6th |
| 18 | Cir. 1981) ("entire record. . . not just the judgment"); *In re Shuler,* 722 F.2d 1253, 1257 (5th Cir. 1984), |
| 19 | *cert. denied*, 469 U.S. 817 (1984) (same); *In re Latch*, 820 F.2d 1163, 1167 (11th Cir. 1987) (same). *See* |
| 20 | *also*, 4 Collier on Bankruptcy ¶ 523.12[5] (2005) ("The court called upon to determine whether the |
| 21 | judgment is dischargeable should look to the entire record to determine the wrongful character of the act, |
| 22 | for even the pleadings are not necessarily conclusive."). |
| 23 |        As the Ninth Circuit has noted: "It is not enough that the party introduce the decision of |
| 24 | the prior court; rather, the party must introduce a sufficient record of the prior proceeding to enable the |
| 25 | trial court to pinpoint the exact issues previously litigated." *United States v. Lasky*, 600 F.2d 765, 769 |
| 26 | (9th Cir. 1978), *cert. denied*, 444 U.S. 979 (1979). |

1         In this case, the parties have each moved for partial summary judgment on the § 523(a)(6)

2 issues, and together have provided what they agree is the necessary underlying record. Thus, according

3 to both parties, the matter may be decided on summary judgment as a matter of law. Neither side

4 maintains that issues of fact exist which require a re-trial of the issues.

5

6 **B.**    **Are Attorneys' Fees of $26,765 Non-Dischargeable?**

7

8         The largest component of the claim for non-dischargeability is the $26,765 which was

9 awarded for the Nelsons' attorneys' fees.

10         The Nelsons' complaint (Ex. A) contained a breach of contract count (Count I) for which

11 attorneys' fees may be awarded to the prevailing party if a contested action arises out of an express or

12 implied contract. ARIZ. REV. STAT. § 12-341.01(A). The Nelsons sought fees only under this statute.

13 (Ex. A.) The only other distinct basis, under that statute, by which fees may be awarded is upon a clear

14 and convincing showing "that the claim or defense constitutes harassment, is groundless and is not made

15 in good faith." ARIZ. REV. STAT. § 12-341.01(C). This second ground, however, was neither alleged nor

16 proven by the Nelsons. Thus, it appears that fees were sought only under the contract provision of the

17 statute.

18         The jury found in favor of the Nelsons on the breach of contract count, although it

19 awarded them no damages. Thus, because the Nelsons prevailed, it was not improper for the court to

20 award attorneys' fees "to the successful party" on that count, even though no damages flowed therefrom.

21 ARIZ. REV. STAT. § 12-341.01 (D) specifically leaves the discretion, to award fees under the statute, to

22 "the Court and not a jury . . . ."

23         However, from a bankruptcy standpoint, a mere breach of contract claim does not give

24 rise to a non-dischargeable debt under 11 U.S.C. § 523(a)(6). *Snoke v. Riso (In re Riso)*, 978 F.2d 1151,

25 1154 (9th Cir. 1992). A statutory right to an award of attorneys' fees for a breach of contract does not

26 fit the test for a "wilful and malicious injury." It merely presents a possible monetary consequence for

breaching a contract. *See, e.g., Kawaauhau v. Geiger,* 523 U.S. 57, 118 S.Ct. 974 (1998); *In re Thiara,* 285 B.R. 420 (9th Cir. BAP 2002) (11 U.S.C. § 523(a)(6) cases).

The Nelsons also appear to argue that the attorneys' fee award arises out of the intentional tort of interference with a property right, for which they also obtained judgment. However, in Arizona, attorneys' fees for tort actions are not generally allowed.

There is one exception to this general rule. In certain types of contract cases, a successful party on <u>insurance contract</u> "bad faith" claims may recover not only attorneys' fees expended for litigation on the contract claim, but also fees expended in litigating an "interwoven" tort claim. *See Pettay v. Insurance Mktg. Servs., Inc. (West),* 156 Ariz. 365, 368, 752 P.2d 18, 21 (1987); *Campbell v. Westdahl,* 148 Ariz. 432, 440-41, 715 P.2d 288, 296-97 (1985). This exception is narrow, allowing attorneys' fees for "bad faith" denial of contractual insurance claims to be awarded. But these claims are a direct result of a breach of an insurance contract.

In such cases, the injured party usually alleges a combination of tort and contract claims, or merely a tort claim which has as its basis the breach of an insurance contract. Regardless of the form of the pleadings, a court considering that type of a "bad faith" claim will look to the nature of the action and the surrounding circumstances to determine whether the claim is one "arising out of a contract." *Wenk v. Horizon Moving & Storage Co.,* 131 Ariz. 131, 132, 639 P.2d 321, 322 (1982). The leading Arizona case in this area is *Sparks v. Republic National Life Insurance Co.,* 132 Ariz. 529, 647 P.2d 1127 (1982), an insurance bad faith case.

In *Sparks,* the plaintiffs successfully brought an action against their insurer claiming, in part, breach of contract and bad faith (tort). In determining whether the action was one "arising out of a contract" pursuant to § 12-341.01, the Arizona Supreme Court stated that attorneys' fees may be awarded "upon facts which show a breach of contract, the breach of which may also constitute a tort." *Id.* at 543, 647 P.2d at 1141. The fact that the two legal theories are intertwined, it explained, does not preclude recovery of attorneys' fees under § 12-341.01(A) "as long as the cause of action in tort could not exist *but for* the breach of the contract." *Id.*

The basis for this finding is the legal duty, implicit in an insurance contract, that the insurer must deal in good faith with its insured. *Id.* at 543-44, 647 P.2d at 1141-42, quoting *Noble v. National American Life Ins. Co.*, 128 Ariz. 188, 190, 624 P.2d 866, 868 (1981). Because the tort of bad faith was "so intrinsically related to the contract," the Supreme Court held that the insured's action was one "arising out of a contract" within § 12-341. *Sparks v. Republic National Life Insurance Co.*, 132 Ariz. at 544, 647 P.2d at 1142.

The instant case is altogether different from the *Sparks* and *Noble* line of cases. Here, the breach of contract theory was based upon language in a warranty deed, which their predecessor had been a party to, while the tort "interference" theory arose out of a common law set of facts which the Nelsons equate to intentional and tortious acts. The two causes of action were not "interwoven" as are the insurance bad faith cases.[1]

Thus, the only basis for the $26,765 fee award would have been solely for the Nelsons' breach of contract count, which arose out of the warranty deed which granted them an easement.

Since a mere breach of contract claim is dischargeable, and the instant breach of contract was not "interwoven" with a "bad faith" insurance-related tort as Arizona law requires, summary judgment will be granted to Defendants Yarbrough on this aspect of the state court's judgment. The $26,763 of attorneys' fees is thus dischargeable.

---

[1]    Moreover, it does not appear that Arizona even recognizes a tort of "intentional interference with property rights," and appellate courts have refused to extend the law that far. *See Tobias v. Dailey*, 196 Ariz. 418, 998 P.2d 1091 (Div. 1, Ariz. Ct. App. 1000). Nevertheless, here, the Superior Court allowed the issue to go to the jury, and a judgment was rendered on the claim, which was not appealed. Thus, the parties are bound by the state court decision, and the judgment's preclusive effect may now be determined by the bankruptcy court.

C. **Is the Judgment for Intentional Interference With a Property Right Dischargeable?**

To determine if a state court judgment is non-dischargeable in a bankruptcy case, the bankruptcy court must apply the doctrine of collateral estoppel. Here, the jury awarded damages of $3,900 for the Defendants' intentional interference with the Nelsons' property right.

Although principles of *res judicata* do not apply to dischargeability issues, *Brown v. Felsen,* 442 U.S. 127, 138-39, 99 S.Ct. 2205, 2212-13 (1979), principles of collateral estoppel do. *Brown, id., Grogan v. Garner,* 498 U.S. 279, 284, 111 S.Ct. 654 (1991).

Under bankruptcy law, collateral estoppel (issue preclusion) may bar re-litigation of the same cause of action if four elements exists:

    1.    The issue sought to be precluded must be the same as that involved in the prior action;

    2.    The issue must have been actually litigated;

    3.    It must have been determined by a valid and final judgment; and

    4.    The determination must have been essential to the final judgment.

Arizona's law of collateral estoppel has essentially the same elements. *Garcia v. Gen. Motors Corp.,* 195 Ariz. 510, 514 ¶ 9, 990 P.2d 1069, 1073 (App. 1999). *See, also, In re Berr,* 172 B.R. 209, 306 (9th Cir. BAP 1994). To determine this question, bankruptcy courts look to state law to ascertain if the state law cause of action contains the same elements as a § 523(a)(6) "wilful and malicious" cause of action. If they match, collateral estoppel bars re-litigation. If they do not match, then the bankruptcy cause of action must proceed to trial.

In this case, the Superior Court trial judge instructed the jury that a state law cause of action for intentional interference with a property right existed and, paraphrasing those instructions, it set forth the following elements:

    1.    The interference was substantial;

2.   The interference was intentional, and was intended to cause an adverse result to the Nelsons; and

3.   The interference was unreasonable under the circumstances.

In bankruptcy cases, a "wilful" injury must be "deliberate or intentional." *Geiger*, 523 U.S. at 61, FN 3. The wilful injury requirement of § 523(a)(6) "renders debt nondischargeable when there is either a subjective intent to harm, or a subjective belief that harm is substantially certain." *Carrillo v. Su (In re Su)*, 290 F.2d 1140, 1144 (9th Cir. 2002), *citing Petralia v. Jercich (In re Jercich)*, 238 F.2d 1202 (9th Cir. 2001).

The bankruptcy elements for "malicious" in a § 523(a)(6) action are:

1.   a wrongful act,

2.   done intentionally,

3.   which necessarily causes injury, and

4.   is done without just cause or excuse.

*Jercich*, 238 F.2d at 1209.

Comparing the two sets of elements leaves this court with the conclusion that collateral estoppel does not apply, and that the nondischargeability claim for this type of injury is not entitled to partial summary judgment in favor of Plaintiffs. There are other factual elements which need to be fleshed out at trial in bankruptcy court that did not exist in state court. Therefore, this issue must be tried, to ascertain whether Defendants' conduct rose to a nondischargeable debt for a "wilful and malicious injury."

## **RULING**

The Defendants' motion for partial summary judgment on the $26,765 attorneys' fees claim is GRANTED, and that portion of the Nelsons' claim may be discharged. Plaintiffs' motion for partial summary judgment on this issue is DENIED.

1        Plaintiffs' motion for partial summary judgment on the $3,900 damage claim is DENIED.

2 The Defendants' motion for summary judgment on the same issue is also DENIED. The matter must be

3 tried, in order to determine if the $3,900 judgment is nondischargeable under § 523(a)(6).

4        The court will issue a separate interlocutory order on these issues.

5        The court sets **April 3, 2006, at 9:45 a.m.** in Courtroom 446, for a status conference to

6 explore when the parties will be prepared to try the remaining § 523 (a)(6) and § 727 counts of Plaintiffs'

7 complaint.

8

9        DATED: March 15 , 2006.

10

11        JAMES M. MARLAR

12        UNITED STATES BANKRUPTCY JUDGE

13 COPIES served as indicated below this 15
day of March, 2006, upon:

14

15 Raymond R. Hayes
Bridegroom & Hayes
1656 N. Columbus Blvd.

16 Tucson, AZ 85712
Email bridegroomhayes@ultrasw.com

17

18 Scott M. Baker
Scott Macmillan Baker, PC
4562 N. First Ave., #100

19 Tucson, AZ 85718
Email smbaker1@qwest.net

20

21 Office of the United States Trustee
230 North First Avenue, Suite 204
Phoenix, AZ  85003-1706

22 U.S. Mail

23

24 By MB Thompson
    Judicial Assistant

25

26