# IN THE UNITED STATES BANKRUPTCY COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| In re: | Chapter 7 |
| SHIRLEY YARBROUGH and THOMAS YARBROUGH, | No. 4-05-bk-00816-JMM |
| | Adversary No. 4-05-ap-00158-JMM |
| Debtors. | **MEMORANDUM DECISION** |
| PATRICIA NELSON and JOHNNIE NELSON, | (Opinion to Post) |
| Plaintiffs, | |
| vs. | |
| SHIRLEY YARBROUGH and THOMAS YARBROUGH, | |
| Defendants. | |

A trial in this adversary proceeding was held on May 2 and 3, 2006. The Debtors/Defendants were represented by Raymond R. Hayes; the Plaintiffs were represented by Scott M. Baker and Michael J. Crawford. After consideration of the evidence and the law, the court now issues its decision. Findings of fact and conclusions of law are included herein.

## JURISDICTION

This court has jurisdiction over this core proceeding. 28 U.S.C. §§ 1334 and § 157(b)(2)(I) and (J).

h:\wp\orders\

## ISSUES

1. Is a debt for $3,900, rendered by the Arizona Superior Court, a non-dischargeable obligation pursuant to 11 U.S.C. § 523(a)(6)?

2. Should the Debtors' discharge be denied, pursuant to 11 U.S.C. § 727(a)(2), (a)(4), and (a)(5)?

## OBJECTION TO DISCHARGE

The Nelsons maintain that the Defendants either concealed assets from the Trustee, by failing to list them, made false oaths, or have failed to satisfactorily explain any loss of assets. These arguments focus upon the Defendants' ownership of three types of property:

1. A residence in Mexico;
2. A boat; and
3. Monies received from a sale of a homesteaded residence.

### A. Mexico Home

#### 1. Facts

The Defendants did not list, on their schedules, a fishing home which they rent in Mexico, on or near a lake close to Hermosillo. This home (Ex. J, 13) was constructed on land first leased in 1983, for which lease the Debtors pay $140 per year (Ex. B, C). The Defendants' explanation for failing to list the property was that they did not understand that leased property was required to be reported; they assumed that the schedules and statement of affairs related only to property which was actually owned by them. When questioned about this property at the § 341(a) meeting by the Nelsons' attorney, the

Case 4:05-ap-00158-JMM    Doc 42    Filed 05/04/06    Entered 05/04/06 16:14:26    Desc
Main Document    Page 2 of 13

Yarbroughs answered truthfully, and acknowledged their leasehold interest. The Defendants amended their schedules four months after filing to include this rental house and its contents (Ex. H).

The case Trustee, Beth Lang, testified that she and her attorney investigated the property, to ascertain if it had value to the estate. She noted that, in her opinion, it had no value and would not be administered. Thus, the Trustee will effectively be abandoning this property upon the closing of the case. 11 U.S.C. § 554(c).

## 2. Law

Under § 727(a)(4)(A), the false oath statute, courts generally agree that the plaintiff must prove by a preponderance of evidence that: (1) debtor made a statement under oath; (2) the statement was false; (3) debtor knew the statement was false; (4) debtor made the statement with fraudulent intent; and (5) the statement related materially to the bankruptcy case. *In re Coombs*, 193 B.R. 557, 563 (Bankr. S.D. Cal. 1996), citing *In re Bailey*, 147 B.R. 157, 162 (Bankr. N.D. Ill.1992); *In re Metz*, 150 BR. 821, 824 (Bankr. M.D. Fla 1993); *In re Maletta*, 159 B.R. 108, 112 (Bankr. D. Conn 1993).

As one court put it, the purpose of these requirements is to insure that those interested in the case, in particular the trustee, have accurate information upon which they can rely without having to dig out the true facts or conduct examinations. A debtor has an uncompromising duty to disclose whatever ownership interest he holds in property. It is the debtor's role to simply consider the question carefully and answer it completely and accurately. Even if the debtor thinks the assets are worthless he must nonetheless make full disclosure. In completing the schedules it is not for the debtor to pick and choose which questions to answer and which not to. Indeed, the debtor has no discretion--the schedules are to be complete, thorough and accurate in order that creditors may judge for themselves the nature of the debtor's estate. *Coombs* at 563 -64, citing *In re Lunday*, 100 B.R. 502, 508 (Bankr. D. N.D. 1989); *In re Haverland*, 150 B.R. 768, 770 (Bankr. S.D. Cal 1993); *In re Maletta*, 159 B.R. 108, 112 (Bankr. D. Conn.1993).

However, the denial of a discharge under 11 U.S.C. § 727(a)(4)(A) cannot be imposed where the false statement was the result of a simple or honest mistake or inadvertence. Rather, to sustain an objection to discharge under 11 U.S.C. § 727(a)(4)(A), the debtor must have willfully made a false statement with intent to defraud his creditors. *In re Bodenstein*, 168 B.R. 23, 32 (Bankr. E.D. N.Y. 1994). Similarly, 'material misstatements, absent fraudulent intent, do not warrant denial of a discharge under § 727(a)(4)(A)..." *Coombs* at 564, quoting *In re Parsell*, 172 B.R. 226, 231.

It bears repeating that an essential element under § 727(a)(4)(A) is that debtor acted with an actual intent to defraud. To be sure, that intent may be proven by circumstantial evidence. *In re Devers*, 759 F.2d 751, 753-54 (9th Cir. 1985); *In re Schroff*, 156 B.R. 250, 254 (Bankr. W.D. Mo. 1993). And it may also be inferred from all the surrounding circumstances. *Id.*

The essential point is that there must be something about the adduced facts and circumstances which suggest that the debtor intended to defraud creditors or the estate. For instance, multiple omissions of material assets or information may well support an inference of fraud if the nature of the assets or transactions suggests that the debtor was aware of them at the time of preparing the schedules and that there was something about the assets or transactions which, because of their size or nature, a debtor might want to conceal. *Coombs* at 565.

Here, there is no evidence to dispute Defendants' testimony that they made an honest mistake in interpreting the schedules. This is especially pertinent when considered with the fact that they answered truthfully at the § 341(a) meeting, acknowledged their leasehold interest and provided the Trustee with sufficient information so that the Trustee could investigate the potential asset, and promptly amended their schedules. Additionally, since the Trustee has explained that the asset has no value for the estate, and will be constructively abandoned, there has been no adverse impact to the bankruptcy estate.

From all of the evidence, the court finds and concludes that there was no intent actionable false oath. Nor can the court find an intentional concealment of an asset. Thus, the Plaintiffs' complaint

regarding the Mexico home must be dismissed.

### B. Boat

### 1. Facts

The Nelsons also contend that the Defendants failed to report, on question No. 10 of the Statement of Financial Affairs, that they had transferred or disposed of a boat within one year of the filing of the petition. They argue that this was a violation of § 727(b)(2)(A). That section provides that if a debtor made a transfer, "with intent to hinder, delay, or defraud a creditor or an officer of the estate," a discharge may be denied.

The undisputed facts, as testified to by the Defendants, was that a 1976 Mark Twain model boat had been hauled away, sometime in early 2004, by a junk dealer. According to the Defendants' testimony, the boat had holes in the fiberglass hull, its wood core had been damaged by termites, it had been sitting and rotting in the sun for ten years, and that the Defendants were relieved to not have to pay someone to haul it away.

Essentially, the Defendants did not consider that clearing out junk from their property to be the type of "disposition or transfer" called for in question No. 10.

The court agrees. In the absence of any evidence by the Plaintiffs or the Trustee that this type of used boat had any intrinsic value, this conduct involving a worthless used boat does not fall within the ambit of § 727(a)(2) or (a)(4) of the Bankruptcy Code. There was no intent to conceal the transfer of a valuable asset.

Judgment will be entered for the Defendants on this aspect of Plaintiffs' Complaint.

Case 4:05-ap-00158-JMM    Doc 42    Filed 05/04/06    Entered 05/04/06 16:14:26    Desc
Main Document    Page 5 of 13

## C. Monies Received from the Sale of Homesteaded Residence

### 1. Facts

Six months before they filed bankruptcy on February 24, 2005, the Defendants had owned a residence at 6281 East Calle Silvosa, Tucson, Arizona. They sold this property on August 17, 2004, and netted $49,373.22 (Ex. F). They then deposited the funds into a bank account, and periodically wrote checks or withdrew cash therefrom (see Ex. 11, 12).

The Defendants then began to construct (or the same had been in construction) a home at their new address, 7530 S. Cactus Thorn Lane, Tucson, Arizona (Ex. 6, A). When they filed their chapter 7 petition, six months after the sale of the Silvosa home, they claimed the Cactus Thorn home as exempt, pursuant to ARIZ. REV. STAT. § 33-1101.[1] (Ex. 6, Sch. C.) The Arizona exemption for homesteads is $150,000. ARIZ. REV. STAT. § 33-1101)(A) (as amended).

The Defendants listed the value of the Cactus Thorn home as $140,000 (Ex. 6, Sch. C). A later appraisal of the partially-completed home, as of August 16, 2005, valued the home at $150,000 (Ex. A). The Trustee testified that she inspected the home, and felt that there was no value to the estate (there is a $51,000 mortgage on the property, Ex. 6, Sch. A, D). As a consequence, the Trustee filed a motion to abandon the residence. § 554.

Arizona's exemption statutes also provide that <u>proceeds,</u> from the sale of homesteaded property, are also exempt for a period up to 18 months after sale. ARIZ. REV. STAT. § 33-1101(c).

The Defendants testified that, after sale of their Silvosa home, up to the time they filed bankruptcy six months later, they spent at least $46,563.70 on personalty designated for inclusion in the new home's construction, or upon labor relating thereto. They itemized these items in Exhibit 9.

---

[1] Arizona has opted out of the federal exemption scheme in favor of its state exemptions, as authorized by bankruptcy law.

Case 4:05-ap-00158-JMM   Doc 42   Filed 05/04/06   Entered 05/04/06 16:14:26   Desc
Main Document   Page 6 of 13

Because Arizona's homestead laws are liberally construed in favor of debtors, *Matcha v. Winn*, 131 Ariz. 115, 638 P.2d 1361 (App. 1981), it does not require a legal stretch to extend the homestead exemption to goods, materials, service, or labor which are intended to be attached to a new homestead, if paid out within the 18-month protected period.

The evidence clearly established that the Cactus Thorn home is unfinished and still in the construction phase. (Ex. 10, A). A certificate of occupancy has yet to be issued by the county. (Ex. A.) The personalty designated in Ex. 9 will be affixed to and installed in the new home.

The Nelsons maintain the Defendants have either misused, or failed to account in their schedules for, the net sale proceeds of $49,373.22. To the contrary, the schedules reflect a prior address, lived in until August, 2004 (six months before bankruptcy) (Ex. 6, question 15, Statement of Financial Affairs), which provided the Trustee sufficient information from which to inquire, even if the Defendants inadvertently failed to list the transfer on question No. 10. There was no intent to conceal prior ownership or transfers. The Trustee did not assert that she was somehow misled, nor could she. She is an experienced Trustee, able to read and understand schedules and statement of affairs, herself an attorney, and knowledgeable enough to sort out relevant information. Even to her, the fixtures issue was a "gray area."[2]

Thus, from all of the evidence, the court cannot find any improprieties relevant to the use of the $49,373.22 proceeds, nor does failure to identify it specifically rise to the level of either a concealment or a false oath. The proceeds were includable within the Schedule C claim of homestead.

Accordingly, the Plaintiffs' cause of action as to the homesteaded proceeds shall be dismissed.

---

[2] Additionally, the Defendants amended their statement of affairs to more fully reflect the transaction, on July 13, 2005 (Ex. G).

# NON-DISCHARGEABILITY: 11 U.S.C. § 523(A)(6)

## A. Facts

After a four-day jury trial in Pima County Superior Court, a judgment was entered against Defendants for $3,900 in compensatory, $399 in costs, and $860.20 in jury fees.[3] The case ended when the formal judgment was entered on November 19, 2004 (Ex. E to motion for summary judgment, Dkt. 25).

Five months later, the Defendants filed their chapter 7 bankruptcy proceeding. In ruling on partial summary judgment, the bankruptcy court discharged $26,765 in attorneys' fees, but reserved the issue of wilful and malicious injury, on the other damages and costs, for trial.

After hearing evidence on the same issue, and being in agreement with the Superior Court jury, the court now grants collateral estoppel effect to the following findings of fact made by the jury:

- Defendants [Debtors] YARBROUGH have obstructed the plaintiffs NELSON'S 30-foot wide easement, and

- Defendants YARBROUGH have placed the bottom portion of the driveway in the easement.

(Ex. 3). The court also heard independent testimony and reviewed photographic evidence[4] or the road obstruction, and concludes that the Yarbroughs or their son-agent pressed ahead on such construction even after receiving numerous warnings from the Nelsons and their attorney that the Yarbroughs were impeding their legal right-of-way.

---

[3] The judgment also included an award of $26,765 in attorneys' fees, which this court has found to be dischargeable.

[4] Ex. 19, 5.

Case 4:05-ap-00158-JMM   Doc 42   Filed 05/04/06   Entered 05/04/06 16:14:26   Desc
Main Document    Page 8 of 13

Although the Yarbroughs denied the allegations, their testimony was less credible, in view of Ms. Nelson's corroborated testimony and photographic evidence. Combined with the jury finding, the court finds that the Yarbroughs acted intentionally in a matter calculated to harm the Nelsons' property rights.

**B. <u>Law</u>**

The general policy of bankruptcy law favors allowing an honest debtor to discharge debts and to make a fresh start free from the burden of past indebtedness. *See Lines v. Frederick*, 400 U.S. 18, 19 (1970). Thus, because a debtor in bankruptcy is assumed to be poor but honest, there is a presumption that all debts are dischargeable unless a party who contends otherwise proves, with competent evidence, an exception to discharge. *See Brown v. Felson*, 442 U.S. 127, 138 (1979); Hon. B. Russell, *Bankr. Evid. Manual* ¶ 301.60, p. 704 (2004 ed.).

The corollary to this policy is that only the "honest but unfortunate" debtor is entitled to an entirely unencumbered fresh start. *Grogan v. Garner*, 498 U.S. 279, 296 (1991). Under the statute, a creditor must demonstrate nondischargeability by a preponderance of the evidence. *Id.* at 291. When applying this standard, "[i]n addition to what a debtor may admit to knowing, the bankruptcy court may consider circumstantial evidence that tends to establish what the debtor must have actually known when taking the injury-producing action." *Jett v. Sicroff (In re Sicroff)*, 401 F.3d 1101, 1106 (9th Cit. 2005) (quoting *Su*, 290 F.3d at 1146 n. 6).[5]

---

[5] Unlike the subjective test for "willfulness," the "maliciousness" prong requires proof of "(1) a wrongful act, (2) done intentionally, (3) which necessarily causes injury, and (4) is done without just cause or excuse." *Petralia v. Jercich (In re Jercich)*, 238 F.3d 1202, 1208 (9th Cir. 2001). " This four-part definition does not require a showing of ... an intent to injure, but rather it requires only an intentional act which causes injury." *Murray v. Bammer (In re Bammer)*, 131 F.3d 788, 791 (9th Cir. 1997).

Section 523(a) (6) provides that a chapter 7 discharge does not discharge an individual debtor from a debt for a "willful and malicious injury by the debtor to another entity or to the property of another entity." 11 U.S.C. § 523(a) (6). The "willfulness" and "maliciousness" prongs are analyzed separately. *Carrillo v. Su (In re Su)*, 290 V.Sd 1140, 1146 (9th Cit. 2002).

The law in the area of describing what falls into the category of a wilful and malicious injury, actionable under § 523(a)(6) has been carefully refined in the Ninth Circuit.

Under § 523(a)(6), the injury must be "willful," such that the debtor must have intended the consequences of his action, and not just the action itself. *Kawaauhau v Geiger*, 523 U.S. 57, 61, 112 S.Ct, 974, 140 L.Ed.2d 90 (1998). "The willful injury requirement of § 523(a)(6) is met when it is shown either that the debtor had a subjective motive to inflict the injury or that the debtor believed that injury was substantially certain to occur as a result of his conduct." *Petralia v. .Jercich (In re Jercich)*, 238 F.3d 1202, 1208 (9thCir. 2001), *cert. denied*, 533 U.S. 930, 121 S.Ct. 2552, 150 L.Ed.2d 718 (2001). Thus, negligent or reckless acts which inflict consequential injury do not fall within the ambit of § 523(a)(6). *Geiger*, 523 U.S. at 64, 118 S.Ct. 974.

In addition, the injury must be "malicious." This means that it must also be a wrongful act, done intentionally, which necessarily causes injury, and which is done without just cause or excuse. *Jercich*, 238 F.3d at 1208. Whether an injury is "malicious" requires a separate inquiry, which is reviewed for clear error. *Id.* at 1209 & n. 36; *Su v. Carrillo (In re Su)*, 259 BR. 909, 914 (9th Cir. BAP 2001), *aff'd*, 290 F.3d 1140 (9thCir. 2002).

Based on the foregoing, the court finds, by a preponderance of the evidence, that the Defendants, after having been warned numerous times that their actions were not reasonable, nevertheless continued to forge ahead with building their road, without stopping and making proper inquiry into the limits of what they could properly do relative to the Nelsons' easement. In doing so, they stubbornly caused the Nelsons to have to proceed to a four-day jury trial in Superior Court, in which the Nelsons prevailed. The jury did not award punitive damages, but found the Nelsons to have been injured economically by $3,900, $860.20 in jury fees, and $399 in costs.

The court finds that the Defendants did not act reasonably or responsibly in their wholesale grading and obstruction of the Nelsons' easement. Had they stopped, when warned, and investigated the recorded documents, before making matters worse by plunging ahead, liability under § 523(a)(6) would probably not attach. However, the continued action did intentionally injure the property of the Nelsons, which it cost them $3,900 to remediate. This continued activity was subjectively intended to harm the Nelsons' property interest, and their actions in proceeding to grade and impede were unreasonable and intentionally designed to inflict injury to the Nelsons' property rights.

Consciously ignoring the rights of another in an easement is actionable pursuant to § 523(a)(6). *Cf. In re Conner*, 302 B.R. 509 (Bankr. W.D. Pa 2003); *In re Smith*, 321 B.R. 542 (Bankr. D. Colo. 2005); *In re Coan*, 100 B.R. 572 (Bankr. M.D. Fla. 1989).

Accordingly, the court will enter its judgment finding that the state court judgment for $3,900, plus jury fees of $860.20 and $399 in costs, is non-dischargeable (see Ex. 3; Ex. E to motion for summary judgment, Dkt. 25).

## **RULING**

From the foregoing, the court will enter judgment which:

1. Dismisses, with prejudice, the Plaintiffs' 11 U.S.C. § 727 complaints;
2. Orders the Pima Superior Court judgment for $3,900, plus jury fees of $860.20 and costs of $399, to be non-dischargeable pursuant to §523(a)(6); and
3. Plaintiffs are entitled to their taxable costs in this proceeding. A bill of costs shall be lodged within ten days. Any objection thereto must be filed within seven days thereafter, after which the court will rule.

A separate judgment is issued concurrently with this Memorandum Decision. FED. R. BANKR. P. 9021.

DATED: May **4**, 2006.

_____
JAMES M. MARLAR
UNITED STATES BANKRUPTCY JUDGE

h:\wp\orders\

12

| | |
|---|---|
| 1 | COPIES served as indicated below this __4__ day of May, 2006, upon: |
| 2 | |
| 3 | Raymond R. Hayes<br>Bridegroom & Hayes<br>1656 N. Columbus Blvd. |
| 4 | Tucson, AZ 85712<br>Email bridegroomhayes@ultrasw.com |
| 5 | |
| 6 | Scott M. Baker<br>Scott MacMillan Baker, PC<br>4562 N. First Ave., #100 |
| 7 | Tucson, AZ 85718<br>Email smbaker1@qwest.net |
| 8 | |
| 9 | Michael J. Crawford<br>Chandler & Udall LLP<br>33 N Stone Suite 2100 |
| 10 | Tucson, AZ 85701-1415<br>U.S. Mail |
| 11 | |
| 12 | Office of the United States Trustee<br>230 North First Avenue, Suite 204<br>Phoenix, AZ 85003-1706 |
| 13 | U.S. Mail |
| 14 | |
| 15 | By /s/ M.B. Thompson<br>      Judicial Assistant |